James F. STERN, Plaintiff-Appellant,

v.

CREDIT BUREAU OF MILWAUKEE, Defendant-Respondent.

Court of Appeals

*No. 81–729. Submitted on briefs November 11, 1981.—*
*Decided December 21, 1981.*
(Also reported in 315 N.W.2d 511.)

For the plaintiff-appellant the cause was submitted on the briefs of *Robert D. Sullivan* of *Merten & Schwemer, S.C.,* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *John R. Dawson* and *Steven P. Morstad* of *Foley & Lardner* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Randa, J.

MOSER, P.J. James F. Stern (Stern) brought this action against Credit Bureau of Milwaukee (Credit Bureau) seeking damages for reckless and malicious libel. The trial court granted Credit Bureau's motion for summary judgment. Stern appeals from that order. Because we conclude that the communication at issue is not defamatory as a matter of law, and that Stern's claim under the Fair Credit Reporting Act[1] was not pleaded or argued before the trial court, we affirm.

. The following facts were established by depositions, answers to interrogatories and affidavits.

Credit Bureau collects, stores and dispenses to its subscribers credit information concerning consumers in the six-county metropolitan Milwaukee area. Credit Bureau has credit information concerning approximately 1,457,-000 people and processes 60,000 credit checks per month.

Prior to 1974, Credit Bureau's employees manually extracted credit information from its own files. In 1974, Credit Bureau switched from a manual information storage and retrieval system to a computer time-sharing system. All of the pre-1974 credit information in Credit Bureau's files was encoded and entered into computers owned and operated by Trans Union Systems Corporation (Trans Union), the company with whom Credit Bureau contracted for this purpose. The computer operations all occurred in Chicago, Illinois.

In early January, 1979, Stern and his wife completed two application forms, each of which covered both Master Charge and Visa credit cards. The couple sent

---

[1] 15 U.S.C. § 1681 *et seq.* (1976).

one form to the Marine National Exchange Bank of Milwaukee (Marine) and another to the Heritage Bank of Whitefish Bay (Heritage).

On January 22, 1979, Heritage and Bankcard Associates (Bankcard), Marine's credit card subsidiary, each independently obtained a credit report on the Sterns. Bankcard used its own computer terminal and obtained the information directly on-line from the Trans Union computer. Heritage called Credit Bureau's office, and the Credit Bureau employees obtained and forwarded to Heritage the identical report.

The credit report contained two erroneous statements. The "Former Address" box indicated that Stern had once lived at 736 Milwaukee Street in Delafield. He had not. The "Public Record" section indicated, to anyone familiar with its code abbreviations, that a civil judgment for $3737 against Stern and in favor of Avco Finance had been entered in Milwaukee county in November, 1973. It was not. This judgment was entered instead against a James W. Stern, who resided at 736 Milwaukee Street in Delafield, Wisconsin.

When Heritage received the credit report, it contacted Avco Finance. As Avco Finance had no information regarding a judgment against Stern, Heritage approved the Sterns' application and forwarded it to the First Wisconsin Bank. The First Wisconsin Bank claims to have mailed the Master Charge and Visa cards to the Sterns a short time later. Stern denies receiving them.

Bankcard initially denied the Sterns' application and, on January 26, 1979, mailed one form letter for each of the two credit cards to Stern, advising him of the denial. The letters indicated that the credit cards were denied due to "credit information" regarding "Garnishment, Attachment, Foreclosure, Repossession or Suit." The letter also indicated that this information was provided by Credit Bureau.

Stern, angered by these letters, immediately telephoned Western Union and instructed them to deliver the following telegram to Credit Bureau:

TAKE NOTICE THAT CREDIT INFORMATION ALLEGED TO HAVE BEEN GIVEN BY YOU TO BANKCARD ASSOCIATES FOR VISA MASTER CHARGE AND MARINE NATIONAL EXCHANGE BANK TO THE EFFECT THAT THERE ARE OR EVER WERE EITHER GARNISHMENT ATTACHMENT FORECLOSURE REPOSSESSION OR SUIT AGAINST THE UNDERSIGNED IS KNOWINGLY FALSE IN EVERY RESPECT AND CONSTITUTES GROSS AND ACTIONABLE LIBEL AND AN UNWARRANTED ATTACK ON THE CREDIT STANDING AND REPUTATION OF THE UNDERSIGNED. DEMAND IS HEREBY MADE ON YOU FOR A COMPLETE AND IMMEDIATE PUBLIC RETRACTION OF THESE LIBELOUS STATEMENTS AND FOR DAMAGES WITH RESPECT THERETO.

Howard Welte (Welte), general manager of Credit Bureau, received this telegram at 8:40 a.m. on Monday, January 29, 1979. He ordered the credit report and, noting the judgment in favor of Avco Finance, he directed a review of the relevant court records. He then learned that the judgment indicated in Stern's credit report had actually been entered against James W. Stern of 736 Milwaukee Street in Delafield.

The following morning Welte telephoned Stern to correct the errors and verify the remaining information in the report. Stern refused to answer his questions and informed Welte that on Monday he had prepared and filed the complaint in this action.

Welte corrected Stern's credit file. He then telephoned the three recipients of the credit report, Heritage, Bankcard and Marine (who had obtained the report in February, 1978), and advised them of the error and its correction. Bankcard claims to have mailed a Visa card to Stern on the following day and a Master Charge card shortly thereafter. Stern denies receiving these cards.

Credit Bureau answered the complaint and on July 3, 1979, it moved for summary judgment on the grounds that there was no issue of material fact because the credit report was incapable of conveying a defamatory meaning, was not maliciously or willfully issued in violation of 15 U.S.C. sec. 1681h(e), and was a privileged communication, the privilege of which had not been abused. A hearing on the motion was held on November 12, 1979. In a memorandum decision and order dated February 26, 1981, the trial court granted Credit Bureau's motion. The trial court found that the credit report was a con-ditionally privileged communication and that the Credit Bureau had not abused the privilege. Stern appeals from that order.

Stern argues on appeal that the trial court erred in granting Credit Bureau's motion for summary judgment because genuine issues of material fact exist as to: (1) whether there was an abuse of conditional privilege by Credit Bureau; and, (2) whether Stern has a cause of action against Credit Bureau pursuant to the Fair Credit Reporting Act.

Our review of an order granting summary judgment is governed by the same standard as that applied by the trial court.[2] We first examine the pleadings to determine whether a claim for relief has been stated.[3] We then follow the procedure prescribed in sec. 802.08(2), Stats., granting summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4]

---

[2] *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 760, 300 N.W.2d 63, 69 (1981).

[3] *Id.*

[4] *Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555, 558, 297 N.W.2d 500, 502–03 (1980).

The material allegation of Stern's complaint, set forth at paragraph 8, arguably states a claim for relief.[5] However, based upon all the documents on file, we conclude that the communication at issue is not defamatory as a matter of law and that Stern's claim alleging willful noncompliance with the Fair Credit Reporting Act was not pleaded before the trial court. We hold that summary judgment was properly granted.

## DEFAMATION

Stern characterizes as "grossly libelous" the statement in Bankcard's January 26, 1979 letter to Stern that he had been subject to "garnishment, attachment, foreclosure, repossession or suit." Bankcard is not a party to this suit. Consequently, the language of its letter is not at issue here. The communication that is in fact at issue is the credit report issued by Credit Bureau to three of its subscribers. The pertinent portion of that report provides:

Public Record

| Court | Date | Liab | Type | Assets | Paid | Docket Num. | Plaintiff/ Attorney |
|---|---|---|---|---|---|---|---|
| CC | 11/73R | $3737 | CJ U | | | 35276 | Avco Finance |
| C1 | 11/73R | $3737 | CJ U | | | C74511 | Avco Fin. |

[5] Paragraph 8 of Stern's complaint alleges:

[In] response to the credit information inquiry of Bankcard Associates from the defendant, Credit Bureau of Milwaukee, recklessly and maliciously and with utter disregard for the truth, for plaintiff's reputation and credit standing in the community, personally or with financial institutions, business associates and professional clients, stated in writing to Bankcard Associates and others unknown to the plaintiff, that plaintiff was presently and/or had been subject to "garnishment, attachment, foreclosure, repossession or suit."

To one familiar with the code abbreviations, these entries indicate a judgment was entered in November, 1973, against Stern for $3737.

In an action for libel, our first inquiry is whether the communication complained of is defamatory.[6] Our supreme court has adopted the Restatement definition of defamatory which reads: "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[7]

In our opinion, the mere communication that a judgment was entered against Stern is not sufficient "to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

Stern apparently agrees. The record reflects that when Stern was asked whether anyone had stopped associating with him or had tried to avoid him in public as a result of the credit report, Stern responded:

[I] think that is a reaction that I would not expect from anyone, I have never heard of a situation where a friend did not speak to another friend because the other person had a judgment against him. That's rather strong medicine it seems to me.

Q. That would be totally out of proportion?

A. Utterly out of proportion unless he was the fellow against whom the judgment was and had been defrauded.

Stern emphasizes the impact of Credit Bureau's error to a man of his "substantial means." Aside from the initial rejection of his credit card application by Bankcard, nothing in the record indicates that Stern suffered any adverse effects in his business, professional or per-

---

[6] *Lathan v. Journal Co.*, 30 Wis. 2d 146, 151, 140 N.W.2d 417, 420 (1966).

[7] *Id.* at 153, 140 N.W.2d at 421; *Prahl v. Brosamle*, 98 Wis. 2d 130, 139, 295 N.W.2d 768, 775 (Ct. App. 1980).

sonal dealings. Even if such harm had been shown, "[a]ctual damage does not determine the nature or character of the cause of the injury."[8] Unless a statement is libelous on its face, its actual effect or damage will not make it so.[9] The erroneous statement by Credit Bureau that a judgment had been entered against Stern, is not libelous on its face and not reasonably capable of a defamatory meaning as a matter of law. In view of this holding, it is unnecessary for us to reach the question of conditional privilege.[10]

## FAIR CREDIT REPORTING ACT

On appeal, Stern has asserted an additional right to recovery based on Credit Bureau's alleged noncompliance with 15 U.S.C. sec. 1681e(b) of the federal Fair Credit Reporting Act. 15 U.S.C. sec. 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Section 1681-o of the Act permits an aggrieved party to recover damages, costs and reasonable attorney's fees when a credit reporting agency fails to comply with any requirement imposed by the Act. If the failure is willful, sec. 1681n authorizes punitive damages.

There is nothing in the record to indicate that a claim based on negligent or willful noncompliance with the federal Fair Credit Reporting Act was pleaded or argued below.[11] A theory of relief neither pleaded nor argued

---

[8] *Frinzi v. Hanson,* 30 Wis. 2d 271, 278, 140 N.W.2d 259, 262 (1966).

[9] *Id.*

[10] *Lathan, supra* note 6, at 151, 140 N.W.2d at 420.

[11] A claim under § 1681 or § 1681-o of the Fair Credit Reporting Act is separate and distinct from any claim for defamation

to the trial court will not be considered on appeal.[12] A party cannot attack an adverse summary judgment by attempting to amend its complaint on appeal.[13]

Stern strenuously argues that his claim under the Fair Credit Reporting Act, if not pleaded below, was in fact argued to the trial court at the summary judgment hearing on November 12, 1979. These arguments were not considered by the trial judge in his decision and no record of these arguments is before us. However, in the interest of judicial economy, and to assure both parties to this action of a fair and final result, we exercise our discretion to review the federal claim.[14]

Stern argues that Credit Bureau violated the Fair Credit Reporting Act by failing to follow reasonable procedures at one or more of the following times:

1. when the information from the two "Stern" files was entered into the computer;
2. when the computer commingled the information from the two files; and,
3. when the employees of Credit Bureau inspected the report at Heritage Bank's request and failed to investigate its accuracy.

---

or libel. *See, e.g., Thornton v. Equifax, Inc.,* 619 F.2d 700 (8th Cir.), *cert. denied,* 449 U.S. 835 (1980); *Hauser v. Equifax, Inc.,* 602 F2d 811 (8th Cir 1979). Although Stern's brief in opposition to Credit Bureau's motion for summary judgment comments on Credit Bureau's analysis of the statute, the brief does not mention §§ 1681e(b), 1681n, or 1681-o. Nothing in that brief could be construed to suggest that Stern alleges a cause of action under either § 1681n or § 1681-o. Credit Bureau's supplemental letter brief in support of its motion to dismiss suggests that some sort of action under the Fair Credit Reporting Act may have been argued before the trial court, but the brief is too vague to constitute a sufficient record for purposes of review.

[12] *Insurance Co. of N. America v. Universal Mortgage Corp.,* 82 Wis. 2d 170, 175, 262 N.W.2d 92, 94–95 (1978).

[13] *Richman v. Security Sav. & Loan Ass'n,* 57 Wis. 2d 358, 361, 204 N.W.2d 511, 513 (1973).

[14] *Allen v. Allen,* 78 Wis.2d 263, 270–71, 254 N.W.2d 244, 248 (1977).

The first two allegations do not state a cause of action against Credit Bureau. The employees of Trans Union, not the employees of Credit Bureau, entered the data from Credit Bureau files into the computer. The facts are uncontroverted that, at the time of entry, the information in the two "Stern" files was accurate. The computer which may have commingled these files was likewise controlled by Trans Union—not by Credit Bureau. The computer was located at Trans Union's Chicago, Illinois, facility, and operated by Trans Union personnel.

The record is barren of any evidence that would indicate an agency relationship between Trans Union and Credit Bureau. They are two separate entities, linked only by the contract which enabled Credit Bureau to use the Trans Union computer system. Credit Bureau cannot be held liable for the procedures followed by Trans Union.

The only question remaining is whether the employees of Credit Bureau failed to follow reasonable procedures by willfully or negligently failing to investigate apparent discrepancies on the face of the credit report. We think not.

The incorrect former address and judgment attributed to Stern were reported in addition to an otherwise entirely accurate set of facts. Contrary to Stern's contention, the only name that appeared on the credit report was his own. The employee performing the credit check could not readily have seen that Stern had a different middle initial than the party against whom the judgments were rendered. Because the erroneous former address was reported along with Stern's correct former and current address, the fact that Stern had an address different than Milwaukee Avenue in Delafield, Wisconsin, would not make the Delafield address noticeably in-

correct. In short, there was nothing on the face of the credit report that would prompt a Credit Bureau employee unfamiliar with the details of Stern's financial and personal history to investigate the entries in question. The failure to do so was neither willful nor negligent as a matter of law.

*By the Court.*—Order affirmed.