Lois DEMERATH, Richard Eiting, Thomas H. Fassbender, Donald Frederickson, William Geyso, Debra Huss, Bernard Leiterman, Eugene Lorenz, Marilyn Loveless, Kathleen Schmidt, Earl Vande Hey and Raymond Van Zeeland, Plaintiffs-Appellants,

v.

The NESTLE COMPANY, INC., a Connecticut corporation, Defendant-Respondent.†

Court of Appeals

No. 84–049. Submitted on briefs July 9, 1984.—
Decided October 9, 1984.
(Also reported in 358 N.W.2d 541.)

† Petition to review denied.

For the appellants the cause was submitted on the briefs of *James H. Fassbender* of Kaukauna.

For the respondent the cause was submitted on the brief of *Ira Michael Sheppard, Paul Monroe Heylman, Schmeltzer, Aptaker & Sheppard, P.C.*, of Washington, D.C., and *Thomas L. Williams* and *Gabert E. Williams* of Appleton.

Before Foley, P.J., Dean and Nettesheim, JJ.

DEAN, J. Lois Demerath and other former employees of The Nestle Company appeal the summary judgment denying their claim for severance pay under a company personnel policy upon Nestle's sale of its White Clover Dairy operation. Nestle refused to give severance pay because the employees were immediately hired by the plant's new owners to substantially equivalent positions at the same salary. The former employees argue that the trial court misinterpreted the severance pay policy and that, properly interpreted, the policy provided for severance pay under these circumstances. Because we conclude that the employees were entitled to severance pay under the terms of the personnel policy, and that summary judgment should have been granted in the employees' favor on the issue, we reverse that part of the judgment.[1]

■■

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Stern v. Credit Bureau*, 105 Wis. 2d 647, 651, 315 N.W.2d 511, 514 (Ct. App. 1981) ; sec. 802.08(2), Stats. Questions of law are properly decided by summary judgment. *Kania v. Airborne Freight Corp.*, 99

---

[1] In their complaint, the employees also sought short-notice pay pursuant to another section of the personnel policy. The trial court rejected the claim. The employees have not appealed this issue. We consequently affirm that part of the judgment.

Wis. 2d 746, 763, 300 N.W.2d 63, 70 (1981). Personnel policies, offering stated benefits in exchange for the employee's service, are binding contracts upon the substantial performance of the requested services. *Compton v. Shopko Stores, Inc.*, 93 Wis. 2d 613, 625, 287 N.W.2d 720, 725 (1980) ; *Zwolanek v. Baker Manufacturing Co.*, 150 Wis. 517, 522, 137 N.W. 769, 772 (1912). The construction of a contract is a question of law and we owe no deference to the trial court's interpretation. *Herwig v. Emerson & Eggen*, 98 Wis. 2d 38, 39, 295 N.W.2d 201, 203 (Ct. App. 1980).

In its personnel policy, Nestle committed itself to pay severance benefits to employees who were involuntarily terminated through (1) the closing of a plant; (2) the elimination of an employee's position; (3) substandard work; or (4) an inability of the employee to get along with associates. First, the employees were terminated as Nestle employees when the plant was sold. When part or all of a company is sold and the employees are told that they cannot remain with their old employer, their employment has been terminated even though they immediately begin to work for the new owner. *Dahl v. Brunswick Corp.*, 356 A.2d 221, 225 (Md. 1976). The sale ended Nestle's involvement with the employees. This is not a situation where Nestle remained in contact with the employees either through a corporate merger or because the sale involved Nestle's acquisition by a purchaser. The White Clover Dairy was sold to an independent corporate entity. The termination was also involuntary in that no employee was given the option of remaining with Nestle. The remaining question is whether the involuntary termination involved one or more of these four circumstances.

By selling the plant, Nestle eliminated the employees' positions. Nestle permanently terminated its relationship with the employees and, at the same time, elimi-

nated the employee's positions. The positions once occupied by the employees no longer exist in the company. Nestle argues, however, that the employees' positions still exist under the new employer. Nestle incorrectly looks at events occurring subsequent to its elimination of the positions. The new employer was under no duty to maintain any positions at the plant and chose not to recreate some of the positions. That the new employer chose to hire some Nestle employees for identical positions does not alter the conclusion that Nestle's actions were within the policy's terms. The former Nestle employees became new employees in new positions in a new company. There is no guarantee that the new employer will offer the same job security, benefits, or contract rights.

Nestle itself has given the contract a construction that is inconsistent with its present position. Employees who simply did not wish to work for the new owner were given full severance benefits. Yet, under Nestle's proposed interpretation, these employees' positions still exist at the plant and the employees should have been denied severance pay.

Nestle may not avoid its contractual obligations merely because it would be unjust to require payments when the former employees continue in the same jobs, at the same plant, on the day after the sale, thereby suffering no period of unemployment. While one purpose of severance pay is to alleviate the consequent need for economic readjustment, *Compton*, 93 Wis. 2d at 623, 287 N.W.2d at 725, economic need is immaterial if the contract provides for severance pay regardless of the existence or nonexistence of economic need. *Willets v. Emhart Manufacturing Co.*, 208 A.2d 546, 548 (Conn. 1965); *Adams v. Jersey Central Power and Light Co.*, 120 A.2d 737, 740 (N.J. 1956). Severance pay may, and frequently does, exist where there is no

interruption whatever in the continuity of employment. *Willets*, 208 A.2d at 548. The contractual terms control. *Compton*, 93 Wis. 2d at 625, 287 N.W.2d at 725.

For the first time on appeal, Nestle argues that provisions of the Federal Employee Retirement Income Security Act of 1974 apply to this case. Issues not raised before the trial court will not be considered upon review. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W. 2d 140, 145 (1980).

*By the Court.*—Judgment affirmed in part and reversed in part. Costs to appellants.