William R. MENARD, Plaintiff-Respondent, †

v.

Don SASS, d/b/a Sass Investment & Realty, Defendant-Appellant.

Court of Appeals

*No. 84–2321. Submitted on briefs October 9, 1985.—Decided November 20, 1985.*
(Also reported in 379 N.W.2d 344.)

For the defendant-appellant, there were briefs by *Phil Elliott, Jr.,* of West Allis.

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

Before Scott, C.J., Brown, P.J., and Wedemeyer, J.

BROWN, P.J. We are asked to construe *ab initio* a standard provision in a real estate broker's contract concerning moneys due broker if the buyer defaults. There is no question but that the broker produced a ready, willing and able buyer. Under Wisconsin law, he is entitled to a full commission. We hold that the provision in the standard listing agreement, in which broker agrees to take less, is operable only in a narrow instance. Since that instance did not occur here, broker is entitled to a full commission. We reverse the trial court's ruling to the contrary.

The language at issue is found in a standard printed listing agreement form, apparently much used in Wisconsin. The language says, in part, as follows:

> If buyer of the Property should fail to carry out the buyer's agreement, *and SELLER elects to take as liquidated damages all money paid by buyer,* then such money shall be applied first to reimburse BROKER for cash advances . . . and one-half of the balance, . . . shall be paid to broker . . . . [Emphasis added.]

In construing this portion of the contract, we do so *ab initio. See Zweck v. D P Way Corp.,* 70 Wis.2d 426, 435–36, 234 N.W.2d 921, 926 (1975). We need give no deference to the trial court, as contract interpretation is a question of law. *Demerath v. Nestle Co.,* 121 Wis.2d 194, 197, 358 N.W.2d 541, 543 (Ct. App. 1984).

The facts are uncontested. Menard (the seller) enlisted Sass (the broker) to help him sell commercial real estate for $450,000 in return for a five percent commission. The brokerage agreement included the above-quoted contractual language.

Sass produced a ready, willing and able buyer who agreed in writing to buy the commercial property in return for property and cash with a land contract for the remainder. As part of the agreement, Menard and the buyer agreed on liquidated damages of $1,000 should either party default. The agreement further provided that the buyer pay $50,000 before closing.

The buyer paid Menard the $50,000 but defaulted prior to closing. One of Sass' positions is that he is entitled to his full commission. We agree.

■

Once a broker procures a ready, willing and able buyer, the broker is entitled to a full commission. *Mansfield v. Smith*, 88 Wis.2d 575, 585–86, 277 N.W.2d 740, 745 (1979). The exception to this rule is a stipulation in the listing contract to the contrary. *Id.* at 586, 277 N.W.2d at 745.

It must be assumed that parties to a contract have knowledge of the law in effect at the time of the agreement. *Broenen v. Beaunit Corp.*, 440 F.2d 1244, 1249 (7th Cir. 1970). A reasonable economic analysis of this law dictates that a broker will not lightly relinquish the right to a full commission.

The contractual provision at issue does provide for the broker's relinquishment. Under this provision, the broker will take less than the full commission, upon default, under a limited circumstance—a particular form of liquidated damages. The term "liquidated damages" means to settle damage amounts in advance by agreement. *See Martinson v. Brooks Equipment Leasing, Inc.*, 36 Wis.2d 209, 222, 152 N.W.2d 849, 856 (1967). The particular form of liquidated damages designated is an agreement by the buyer and seller that the seller will have the

right to keep *all money paid* by the buyer prior to closing.[1]

If the seller then elects to accept these moneys instead of suing for specific performance, the broker agrees to be bound by the choice and may only accept half of the liquidated amount, after expenses. That is the plain, unambiguous meaning of the disputed provision.

In this case, the seller and buyer did not agree that all money paid prior to closing could be taken as liquidated damages. Instead, they agreed on a set amount of $1,000. The $50,000 paid to Menard prior to closing was not liquidated damages under the agreement between Menard and the buyer.

█

As such, Menard never fulfilled the condition precedent necessary to oblige the broker to accept less than the full commission. Menard never procured an agreement that the liquidated damages be *all money* paid by buyer prior to closing. Menard's "election" to accept the $1,000 liquidated damages contract with the buyer had no force and effect upon Sass.

Menard claims the disputed provisions should be construed to mean that the broker agrees to accept one-half of *whatever* the buyer and seller agree upon as liquidated damages. We cannot reach this same conclusion. The disputed contractual provision clearly states that broker is bound only upon seller's election to take as liquidated damages *all money paid by buyer.* There would be no need for the underlined language, however, if Menard's view were accepted. It would be enough to say that the broker is not entitled to a full commission if the seller opts to accept liquidated damages. Of course, the contract does not say that. Accepting Menard's view would be to accept sur-

---

[1] Examples of cases where seller and buyer did enter such an agreement are found in *Moritz v. Broadfoot,* 35 Wis.2d 343, 151 N.W.2d 142 (1967) and *Zimmermann v. Thompson,* 16 Wis.2d 74, 114 N.W.2d 116 (1962).

plusage. Courts are reminded to guard against that. *Dyk-stra v. Arthur G. McKee & Co.,* 100 Wis.2d 120, 127, 301 N.W.2d 201, 205 (1981).

This case is reversed and remanded with directions to enter judgment for Sass on his counterclaim while dismissing Menard's complaint.

*By the Court.*—Judgment reversed and cause remanded with directions.