Robert L. KREINZ, Michael L. Kreinz, Douglas Nelson, Harry G. Gill, III, Carol Knight, David H. Halvorsen, Ted Winniski, Grace Koller and Michele Cody, Plaintiffs-Respondents,

v.

NDII SECURITIES CORPORATION, Defendant-Appellant.†

Court of Appeals

*Nos. 86–0764, 86–1389. Submitted on briefs January 29, 1987.—Decided March 18, 1987.*

(Also reported in 406 N.W.2d 164.)

† Petition to review denied.

206

For the defendant-appellant the cause was submitted on the briefs of *Thomas J. Arenz* and *Ross A. Anderson* of *Frisch, Dudek and Slattery, Ltd.* of Milwaukee. Of counsel: *Jeffrey P. Aiken,* General Counsel, NDII Securities Corporation.

For the plaintiffs-respondents the cause was submitted on the brief of *Henry R. Pinekenstein* of *Pinekenstein Law Firm, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.    NDII Securities Corporation (NDII) appeals from a summary judgment holding it liable to the respondents who are former NDII sales representatives and from an order denying a post-judgment motion for relief from the judgment. The judgment is for commissions allegedly earned by the sales representatives while affiliated with NDII.

Upon appeal, NDII makes three claims: (1) that the trial court erroneously applied the "procuring cause" doctrine; (2) that the payment of commissions after the sales representatives had terminated their employment with NDII would be in violation of Wis. Adm. Code, sec. Sec 4.06, and an informal advisory opinion of the Wisconsin Commissioner of Securities; and (3) that payment of the commissions would be in violation of the written employment contract between the sales representatives and NDII. We conclude that

the trial court properly applied the "procuring cause" doctrine when holding NDII liable for the payment of commissions. We also conclude that the trial court correctly ruled that such payments did not violate the administrative rules or the employment contract. Therefore, we affirm.

The following facts were stipulated to by the parties. NDII is a licensed broker-dealer which sells real estate limited partnership interests to individual investors.[1] The respondents were all sales representatives for NDII prior to their termination in April or May of 1981. The contested commissions in this case all arose out of sales to investors of limited partnership interests secured by the sales representatives. The limited partners procured by the sales representatives were required to make their payments on an installment basis. Ordinarily, the sales representatives were paid "a specific percentage commission for every sale made." It was NDII's practice, however, to pay the sales representatives their commissions as the installment payments were received from the limited partners. The dispute in this case arose over the commissions allegedly due on installment payments made after the sales representatives had terminated their relationship with NDII and affiliated with another licensed dealer.

The case was submitted to the trial court on cross motions for summary judgment based upon stipulated facts. Relying on the "procuring cause" doctrine, the trial court partially granted the sales representatives'

---

[1] Under the terms of the agreements relevant to this case, an investor does not become a "limited partner" until he or she has purchased at least five limited partnership interests at $500 each.

motion as it related to the issue of the recovery of commissions.[2]

In reviewing a trial court's grant of summary judgment, we will apply the standard set forth in sec. 802.08(2), Stats., in the same manner as the trial court. *Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 733, 351 N.W.2d 156, 162 (1984). On summary judgment the moving party has the burden to establish the absence of a genuine issue as to any issue of material fact. Moreover, we will not decide the issue of material fact. *Poynter v. Johnston,* 114 Wis. 2d 439, 446, 338 N.W.2d 484, 488 (1983). Rather, we only decide whether there is a genuine issue of fact in dispute. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980). We must reverse the grant of summary judgment if the trial court erred in determining that there is no genuine issue as to any material fact. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676, 678 (1979). Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment. *Grams,* 97 Wis. 2d at 338–39, 294 N.W.2d at 477.

Here, the material facts relevant to the sales commission issue were stipulated and thus were not in dispute. Consequently, whether NDII's former sales representatives were entitled to recover their commissions on the sales contract payments received by NDII

---

[2]The trial court did not grant the motion as it related to NDII's claim that one of the respondents, Robert Kreinz, had negligently or intentionally breached his employment duties. The court structured the summary judgment award to Kreinz so that NDII's potential recovery as to this issue could be set off from the amount awarded to Kreinz.

209

after the representatives' termination was properly presented to the trial court as an issue of law at the summary judgment stage.

In Wisconsin, the "procuring cause" doctrine states that "a selling agent earns his commission when he procures an order from a ready, willing, and able purchaser, and this order is received by the company." *Zweck v. DP Way Corp.,* 70 Wis. 2d 426, 430–31, 234 N.W.2d 921, 924 (1975) (footnote omitted). In a fact situation somewhat similar to that here, the court in *Zweck* held that a former selling agent was entitled to his commissions on sales made prior to his termination. There, Zweck obtained three machine orders and a machine lease prior to his termination. Payment on these orders was not received until after Zweck's termination. The court reasoned:

> There is no question that the commissions were earned prior to termination of the sales agent agreement. True, deliveries were not made nor payments received until after the termination date. However, Zweck earned his commissions when he procured a ready, willing, and able buyer who had filled out a purchase order for the machines which was received by the company. It is undisputed that these events occurred prior to termination of the contract, and so, according to Article XV, Zweck was entitled to his full commission on these sales. Articles V and VI of the contract [providing that the commission was not to be payed until after company received payment from the purchaser] do not alter this result because they do not establish the time when Zweck became entitled to his commissions. They merely fix the time of payment of the commissions as "after receipt of payment from the purchaser."

*Id.* at 430, 234 N.W.2d at 924.

NDII attempts to distinguish *Zweck* on the grounds that in *Zweck* the employee had a written contract which provided that upon termination, the employer would pay "all commissions resulting from all sales made by [Zweck] during the period of th[e] agreement." *Id.* at 429, 234 N.W.2d at 923. While this may have served as the basis for the court's holding, the language of the opinion indicates that absent this contractual language, the court's holding would have been the same. The court stated that its "holding is in accord with the long line of cases in which th[e] court has adhered to the general rule that a selling agent earns his commission when he procures an order from a ready, willing, and able purchaser, and this order is received by the company." *Id.* at 430–31, 234 N.W.2d at 924 (footnote omitted). Consequently, we conclude that the absence of a written provision such as in *Zweck* does not affect the applicability of the procuring cause doctrine. *See, e.g., Murray v. Hamilton Beach Mfg. Co.,* 178 Wis. 624, 190 N.W. 460 (1922) (oral contract for a $5 commission on every machine sold was enforceable).

Next, NDII argues that the procuring cause doctrine is inapplicable because, in light of the nature of the transactions, the sales representatives failed to procure "a ready, willing, and able purchaser." Specifically, NDII points out that all of the installment sales involved here concerned offerings "where the investor makes an initial payment and executes a nonobligatory (nonrecourse) promissory note for future installments." In light of the buyer's right to cease payment, NDII analogizes to cases in the insurance field which hold that an insurance agent is not

automatically entitled to a commission on renewal premiums received after the agent's termination unless contractual language provides otherwise. *See* 4 G. Couch, *Cyclopedia of Insurance Law*, § 26A:235 (rev. 2d ed. 1984); Annotation, *Insurance Agent's Right to Commissions on Renewal Premiums*, 36 A.L.R.3d 958, 984 (1971).

We see NDII's logic as fatally flawed with respect to its characterization of the purchase obligation in this case. Unlike an insurance contract, the rights of a purchaser of a limited partnership interest are not renewed with every payment. Rather, the limited partner, by making the payments, is merely fulfilling his or her obligation under a single, all-encompassing contract which sets forth the respective obligations of each party over the term of the agreement. We see no basis for construing these agreements as breaking out into separate "mini-contracts" for the time periods between payments. The fact that a nonrecourse promissory note is signed does not alter the contractual obligation to make the installment payments. It merely governs the consequences in the event of default.

Next, NDII argues that the judgment requiring it to pay these commissions on sums collected after the representatives' termination would violate the "fee-splitting" prohibition found in Wis. Adm. Code, sec. Sec 4.06(2)(f).[3] For support, NDII cites an informal

---

[3] Wisconsin Adm. Code, sec. Sec 4.06(2)(f) provides:

(2)  The following are deemed "dishonest or unethical business practices" or "taking unfair advantage of a customer" by an agent under s. 551.34(1)(g), Stats., without limiting those terms to the practices specified in this subsection:

. . . .

advisory opinion from the Wisconsin Commissioner of Securities, which stated:

> The office has been asked if the law permits broker-dealers to pay continuing commissions on installment purchases—such as those commonly found in limited partnership interest offerings—to reps no longer licensed as agents for the broker-dealer. The payment of such commissions will not constitute a "prohibited business practice" by broker-dealers under section Sec. 4.06(1), Wis. Adm. Code (Intro.), *provided* the payments are made pursuant to a written agreement or contract between the rep and the broker-dealer to relate to installment purchase programs in existence at the time the rep terminated his or her relationship with the broker-dealer.[4] [Emphasis in original.]

As a preliminary matter we note that Wis. Adm. Code, sec. Sec 4.06(2) contains a nonexclusive list of prohibited practices for *agents* only. Wisconsin Adm. Code, sec. Sec 4.06(1) details the nonexclusive list of prohibited practices for broker-dealers, which does not directly include fee-splitting. However, Wis. Adm. Code, sec. Sec 4.06(2)(f) evidences that fee-splitting is a recognized evil in the securities area. Consequently, we conclude that the activity or promotion of fee-splitting is also a prohibited practice for broker-dealers under Wis. Adm. Code, sec. Sec 4.06(1).

---

(f) Dividing or otherwise splitting commissions, profits or other compensation receivable in connection with the purchase or sale of securities in this state with any person not also licensed as an agent for the same broker-dealer, or for a broker-dealer under direct or indirect common control.

[4]This excerpt was taken from the office of the Commissioner of Securities publication "Words For Reps" at p. 3 (March, 1981).

213

NDII asks us to give the securities commissioner's informal opinion the same deference given to some legal determinations made by other administrative entities.

> Our cases similarly recognize that if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency's conclusions are entitled to deference by the court. Where a legal question is intertwined with factual determinations or with value or policy determinations or where the agency's interpretation and application of the law is of long standing, a court should defer to the agency which has primary responsibility for determination of fact and policy.

*West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539–40 (1984) (footnote omitted).

■

We decline to give the securities commissioner's informal opinion the deference requested by NDII, precisely because it is *informal.* Because it is an informal advisory opinion, it has necessarily not been based upon any "case or controversy"; there has been no formal record made, from which we can measure its correctness. Rather, it is a conclusion based on a hypothetical situation. This is not the type of setting in which the law requires courts to defer to administrative action or decision. Absent an actual case or controversy, supported by a formal record, we decline to read the commissioner's advisory opinion in the expansive manner urged by NDII.

Moreover, we conclude that requiring NDII to pay commissions to its former sales representatives resulting from funds collected following their termination is not a fee-splitting arrangement and therefore not a violation of Wis. Adm. Code, sec. Sec 4.06(1). Prohibited fee-splitting occurs when at least two persons or entities agree to split a fee with a resulting "temptation to both ... to seek so to increase the allowance as to secure a generous provision for both." *See Weil v. Neary,* 278 U.S. 160, 172 (1929). In short, the evil of fee-splitting evinces a "[m]otive for excessive allowance." *Id.*

Here, the improper motive underpinning the concept of fee-splitting is lacking because the payment of commissions following termination merely reflects the former sales representatives' continuing interest in those sales which occurred prior to termination. Improper motive causing fee-splitting can only be found at the time the contract is made when the amount of the allowance is secured. Here, the amount of the allowance was set prior to the sales representatives' termination, and the propriety of the commission payments based on funds received from a sale prior to the termination is not disputed. Therefore, we conclude that the improper fee-splitting motivation to charge an excessive amount was not present. In short, this is not a fee-splitting case.

Finally, NDII argues that the sales representatives' claims are barred by their employment contract which provided:

> In the event the REPRESENTATIVE's association with the COMPANY is terminated by the COMPA-

215

NY for cause or by the REPRESENTATIVE, commissions on sales resulting from orders or applications solicited by the REPRESENTATIVE that are earned as of that date shall be paid.

The trial court held that this written agreement did not govern the representatives' claims since the sales upon which the commissions were based were finalized prior to the execution of the written agreement.

The construction of a written contract raises a question of law and we owe no deference to the trial court's interpretation. *Demerath v. Nestle Co., Inc.,* 121 Wis. 2d 194, 197, 358 N.W.2d 541, 543 (Ct. App. 1984). If the terms of a contract are plain and unambiguous, we will construe the contract as it stands, even though the parties may have placed a different construction on it. *Waukesha Concrete Prods. Co. v. Capitol Indem. Corp.,* 127 Wis. 2d 332, 339, 379 N.W.2d 333, 336 (Ct. App. 1985).

We agree with the trial court's ruling that the written agreement did not govern the claims in this case. The employment contract signed by the former sales representatives unambiguously provided:

As full compensation for all services performed by the REPRESENTATIVE *hereunder* and for all expenses incurred by the REPRESENTATIVE *hereunder,* the COMPANY will pay to the REPRESENTATIVE ... commission ... on the final sales of securities resulting from orders and applications obtained by the REPRESENTATIVE. [Emphasis added.]

216

The above language indicated that the parties comtemplated services performed by a sales representative *under the agreement.* As noted, the commissions at issue in this case are related to sales made prior to the execution of the written agreement. Moreover, we are mindful of our earlier statement that "a broker will not lightly relinquish the right to a full commission." *Menard v. Sass,* 127 Wis. 2d 397, 399, 379 N.W.2d 344, 345 (Ct. App. 1985). Consequently, the employment contract only applies to the services rendered by a sales representative following the execution of the contract. Because the investors in the limited partnership agreements were secured prior to the agreements' execution, we conclude that the employment contract is not applicable to the commissions sought in this case.

*By the Court.*—Judgment and order affirmed.