GENERAL CASUALTY COMPANY OF WISCONSIN, Plaintiff-Respondent,†

v.

Donald A. HILLS d/b/a Hills Standard, Defendant-Appellant,

ABC INSURANCE COMPANY and DEF Insurance Company, Defendants.

Court of Appeals

*No. 95–2261. Submitted on briefs February 5, 1996.—Decided March 12, 1996.*

(Also reported in 548 N.W.2d 100.)

† Petition to review granted.

1

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas N. Harrington, Laura E. Schuett, and Lee Anne Neumann* of *Cook & Franke S.C.* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Donald Hills appeals a summary judgment in favor of his insurer, General Casualty Company of Wisconsin, that declared General Casualty has no duty to defend or indemnify Hills in a separate third-party suit brought against Hills in federal court. Because we conclude General Casualty's insurance policies require it to defend and indemnify Hills in the federal action, we reverse and remand for further proceedings.

The facts are undisputed. Hills has owned and operated Don's Standard[1] gasoline station in Rice Lake, Wisconsin, since 1961. Arrowhead Refining Company operated a used oil recycling business in Germantown, Minnesota, from 1961 to 1977. Hills, in the regular and normal course of business, entered into an agreement with Arrowhead Refining under which Arrowhead Refining agreed to pick up waste at Don's Standard and transport it to the Arrowhead site in Minnesota. In approximately 1976, environmental contamination was allegedly discovered at or near the Arrowhead site. Arrowhead Refining subsequently discontinued its used oil recycling operations.

Eventually, the Arrowhead site was placed on the National Priorities List (NPL) by the United States Environmental Protection Agency. The United States brought an action in the United States District Court for the District of Minnesota against Arrowhead Refining and several other defendants for the reimbursement of response costs. Simultaneously, a consent decree was entered in the federal court. The consent decree was a negotiated settlement between the government and various defendants which outlined remedial work to be performed and described the reimbursement of response costs.

Hills was one of hundreds named as third-party defendants in the federal court action by Arrowhead Refining and other defendants, acting as third-party plaintiffs (collectively, Arrowhead). Arrowhead sought recovery from Hills for past and future response costs

---

[1] Although the case caption identifies Hills' business as "Hills Standard," the parties and the insurance policies refer to the business as "Don's Standard." There is no dispute the parties are referring to the same business, which we will identify as Don's Standard for purposes of this appeal.

associated with the Arrowhead site. Arrowhead's third-party complaint made four claims against Hills: (1) a claim under CERCLA;[2] (2) a claim under the Minnesota Environmental Response and Liability Act (MERLA), §§ 115B.01-115B.24, Minn. Stats.;[3] (3) a common law claim for contribution; and (4) a claim for unjust enrichment.

General Casualty filed this declaratory judgment action in Wisconsin circuit court requesting that the trial court declare General Casualty has no duty to defend or indemnify Hills in the third-party action.[4] Hills filed a counterclaim, alleging that General Casu-

---

[2] CERLCA stands for Comprehensive Environmental Response, Compensation, and Liability Act of 1980, which is codified at 42 U.S.C.A. §§ 9601-75 (1995). Arrowhead's complaint states that if it is found liable in whole or in part to the United States, it seeks recovery of, reimbursement for and/or contribution towards all response costs, including interest, that may have been or may be incurred in the future in any way relating to the Arrowhead site. If Arrowhead is not liable in whole or in part to the United States, it seeks from Hills recovery or reimbursement of all response costs, including interest.

[3] Arrowhead's complaint states that if it is found liable in whole or in part to the United States, it seeks recovery of, reimbursement for and/or contribution towards all response costs, including interest, that may have been or in the future will be incurred in any way relating to the Arrowhead site. Alternatively, if Arrowhead is not liable to the United States, it seeks from Hills recovery or reimbursement of all reasonable and necessary removal costs it incurred with respect to the Arrowhead site.

[4] General Casualty alleged it has no duty to defend or indemnify Hills for ten reasons, including: response costs do not constitute damages within the context of the General Casualty policies, there was no "occurrence" within the policy period of any policy, there is an applicable pollution exclusion, the pollu-

alty had breached its duty to defend Hills. General Casualty filed a motion for summary judgment, alleging that it has no duty to defend or indemnify Hills because there has not been any "suit seeking damages" filed against Hills. The trial court granted the judgment, and also dismissed Hills' counterclaim against General Casualty.[5] Hills now appeals.

Hills contends the insurance policies issued to him by General Casualty afford insurance coverage for the third-party claim against him. Over the years, General Casualty issued several insurance policies to Hills, doing business as Don's Standard. The policies in effect from June 1976 to June 1979 provide in pertinent part:

> **Coverage 2 - Property Damage Liability**: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined. (Emphasis in original.)

The policy in effect from June 1987 to June 1988 provides:

> **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies caused by an **accident** resulting from **garage operations**. (Emphasis in original.)

---

tion was expected or intended (and therefore was not an accident), and others.

[5] General Casualty moved for summary judgment based on only one of the ten claims it alleged in its complaint. Therefore, we do not address the remaining claims. Instead, we reverse and remand the case to the trial court for further consideration of General Casualty's remaining claims and Hills' counterclaim.

6

The policy in effect for certain policy periods from June 1988 to June 1991 provides:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations."

■

Our review of summary judgment is de novo. *Park Bancorporation, Inc. v. Sletteland*, 182 Wis. 2d 131, 140, 513 N.W.2d 609, 613 (Ct. App. 1994). When reviewing summary judgment, we apply the standard set forth in § 802.08(2), STATS., in the same manner as the circuit court. *Kreinz v. NDII Secs. Corp.*, 138 Wis. 2d 204, 209, 406 N.W.2d 164, 166 (Ct. App. 1987). This appeal, based on undisputed facts, concerns the final step in summary judgment: determining whether General Casualty is entitled to judgment as a matter of law on the theory that the insurance policies do not provide coverage for Hills' defense or indemnification in the federal action.

■

The interpretation of an insurance policy is a question of law this court decides independently of the circuit court. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). Insurance policies are controlled by the same principles of law applicable to other contracts. *Id.*

At the outset, we recognize that this court must analyze whether there is coverage for Hills, a Wisconsin insured, under the insurance policies issued by a Wisconsin insurer, for claims under federal and Minnesota law. Neither party has raised a choice of law issue. Instead, the parties agree that Wisconsin law applies

for purposes of determining on summary judgment whether there is insurance coverage. Thus, this court is faced with the task of determining whether, under Wisconsin law, the insurance policies' language requires General Casualty to defend and indemnify Hills in the third-party federal action against him.

Our supreme court addressed insurance coverage for environmental cleanup in *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994). The plaintiffs in *Edgerton* were the City of Edgerton and the owner of a landfill site, Edgerton Sand and Gravel, Inc. *Id.* at 754, 758, 517 N.W.2d at 466, 468. The site of the landfill was owned by the Sweeney family (owners of ES & G) and was used as a dump and burn site for waste materials from the early 1950s through the time of its closing in December 1984. *Id.* at 758 n.5, 517 N.W.2d at 468 n.5. The City of Edgerton leased the site from 1968 to 1984 for landfill operations. *Id.*

Both the city and ES & G received letters from the Wisconsin Department of Natural Resources indicating the DNR suspected groundwater contamination at the landfill. *Id.* at 759-60, 517 N.W.2d at 468. The Environmental Protection Agency also sent ES & G and the city a letter requesting information regarding the disposal of hazardous substances at the landfill. *Id.* Subsequent letters from the DNR ordered the city and ES & G to propose a plan to remediate the site. *Id.* at 760, 517 N.W.2d at 468. Failure to respond would result in the listing of the site on CERCLA's National Priorities List, or state action. *Id.* at 760-62, 517 N.W.2d at 469.

The city and ES & G asked their comprehensive general liability (CGL) carriers to provide coverage for defense costs as well as any liability resulting from

8

Environmental Protection Agency or DNR claims. *Id.* at 762, 517 N.W.2d at 469. One of the nearly identical CGL policies at issue provided:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>     A. bodily injury or
>     B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages . . . .

*Id.* at 769, 517 N.W.2d at 472 (emphasis deleted). The carriers refused to provide coverage. *Id.* at 762, 517 N.W.2d at 469. *Edgerton* held that neither a potentially responsible party (PRP) letter nor a comparable notification letter by a state agency such as the DNR triggers the insurers' duty to defend because the letters do not constitute a "suit" under the CGL policies. *Id.* at 771, 774, 517 N.W.2d at 473, 474.

Additionally, the court went on to hold that the CGL policies did not "provide coverage for Superfund response costs, since such costs do not constitute damages." *Id.* at 782, 517 N.W.2d at 477. *Edgerton* quoted with approval language from *Shorewood School Dist. v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 368, 369-70, 488 N.W.2d 82, 89, 90 (1992) (emphasis in original):

> "Damages" as used in . . . insurance policies unambiguously means legal damages. It is legal compensation for past wrongs or injuries and is generally pecuniary in nature. The term "damages" does not encompass the cost of complying with an injunctive decree.
>     . . . .

> [The] limited construction of the term "dam-
> ages" is consistent with the basic grant of coverage
> in the insurance policies. The insurers agreed to pay
> "all sums which the insured shall become legally
> obligated to pay *as damages*." The insurers did not
> agree to pay "*all sums* which the insured shall
> become legally obligated to pay." The addition of "as
> damages" serves as a qualifier, a limit to coverage.

*See Edgerton*, 184 Wis. 2d at 783-84, 517 N.W.2d at
478. Thus, *Edgerton* stands for the proposition that
letters from an environmental agency do not constitute
a suit and that the agency's order to an owner or occu-
pier of land to remediate the land is nothing more than
an order for injunctive relief.

In the instant case, there is no question that a suit
has been filed against Hills. At issue is whether the
third-party suit against Hills is a suit for damages that
requires General Casualty to defend and indemnify
Hills. For the reasons discussed herein, we conclude
*Edgerton* did not address the situation presented in
this case and furthermore, that the suit against Hills is
a suit seeking "damages" as that term is used in the
General Casualty insurance policies. Therefore, we
conclude General Casualty must provide Hills with
defense and indemnification.

The facts in *Edgerton* were notably different from
the facts before this court. First, the insureds in *Edger-
ton* sought coverage for contamination of property that
they owned or controlled. Here, Hills never owned or
controlled the Arrowhead site. Instead, Hills entered
into an agreement with Arrowhead under which
Arrowhead agreed to pick up waste at Hills' service
station and transport it to the Arrowhead site. Here,
private individuals and companies seek monetary
damages from Hills for Hills' alleged contribution to

10

the contamination of the privately-owned property for which Hills may be liable under federal law. The liability policies at issue promised to pay "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property" and "all sums the insured legally must pay as damages because of bodily injury or property damage." Arrowhead seeks judgment against Hills that will make him legally obligated to pay damages for contributing to the contamination of Arrowhead's property.

Second, the government in *Edgerton* directed the city and ES & G to propose a plan to remediate the contaminated landfill. *Edgerton* stands for the proposition that an order for remediation is not damages. Instead, an order is an injunctive decree which requires a party to perform specific acts. Under *Edgerton*, the term "damages" does not encompass the cost of complying with an injunctive decree. *Id.* at 783, 517 N.W.2d at 478. In contrast, *Edgerton* states that the term "damages" as it is used in insurance policies unambiguously means legal damages, defined as legal compensation for past wrongs or injuries. *Id.* at 784, 517 N.W.2d at 478. Here, Arrowhead is seeking monetary compensation from Hills for costs it has incurred or will incur to clean up the site contamination to which Hills contributed as one of many third-party defendants that recycled their oil through Arrowhead. Arrowhead's suit for monetary compensation is a request for legal damages, not injunctive relief.

The distinctions between *Edgerton* and this case are critical. The function of this court when reviewing insurance policies is to further the insured's reasonable expectations of coverage while meeting the intent of both parties to the contract. *Kremers-Urban Co. v.*

11

*American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). We conclude the damages Arrowhead seeks from Hills are the same "damages" for which General Casualty agreed to provide coverage.

General Casualty argues that because the relief Arrowhead seeks is solely the recovery of response and removal costs, there is no coverage because "*Edgerton* specifically held that such relief does not constitute 'damages' within the context of a liability policy." Under General Casualty's reasoning, if Arrowhead is required to remove contamination and remediate the site under state or federal law, Hills' insurer, General Casualty, is not required to indemnify Hills for his contribution to the contamination of Arrowhead's property. We conclude such a result is neither required by *Edgerton* nor consistent with the purpose of CGL policies: to indemnify insureds for damage they cause to others' property. *See Bausch & Lomb v. Utica Mutual*, 625 A.2d 1021, 1033 (Md. 1993) ("A hallmark of the comprehensive general liability policy is that it insures against injury done to a third party's property, in contradistinction to an 'all-risks' policy also covering losses sustained by the policy-holder."). While the insureds in *Edgerton* were not entitled to coverage under their own liability policies for contamination they inflicted on the land they owned or leased, Hills is entitled to indemnification for his contribution to the contamination on Arrowhead's property, even if the property damage is cleaned up in response to a government directive.

The parties' remaining arguments debate whether the Arrowhead claim under MERLA is similar to a claim under CERCLA. This debate is premised on the belief of both parties that *Edgerton* held there is no insurance coverage for environmental response cases

involving CERCLA. Hills argues that MERLA is broader than CERCLA so that even if this court interpreted *Edgerton* broadly, we could still find coverage for the MERLA claim. Because under our interpretation of *Edgerton*, General Casualty has a duty to defend and indemnify Hills against all of Arrowhead's claims, we will not address the differences between MERLA and CERCLA.

Additionally, the parties addressed the claims of contribution and unjust enrichment. Hills argues that both claims are separate and distinct from any CERCLA action so that even if there is no coverage for the CERCLA claim, there is coverage for the unjust enrichment and contribution claims. General Casualty argues the contribution and unjust enrichment claims are derivative of the underlying claim for response costs and could not exist without it. Because we conclude there is coverage for Hills' liability arising out of Arrowhead's claim, we need not address whether the coverage that also exists for the contribution and unjust enrichment claims is provided by the policies based on their status as independent claims or as derivative claims.

We conclude the third-party suit against Hills seeks "damages" as that term is used in the General Casualty insurance policies. Therefore, we reverse the trial court's summary judgment that declared General Casualty has no duty to defend or indemnify Hills in the third-party action and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.