SPIC & SPAN, INC., Plaintiff-Appellant,

v.

CONTINENTAL CASUALTY COMPANY, American Casualty Company of Reading, Pennsylvania and Hartford Accident & Indemnity Company, Defendants-Respondents.†

SPIC & SPAN, INC., Plaintiff-Appellant,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY of Milwaukee, Wisconsin, Defendant-Respondent.

Court of Appeals

*Nos. 95–1572, 95–1917. Oral argument April 10, 1996.—Decided June 25, 1996.*

(Also reported in 552 N.W.2d 435.)

†Petition to review denied.

For the plaintiff-appellant there were briefs by *Foley & Lardner*, with *Thomas C. Ewing* and *Michael D. Flanagan* of Milwaukee; oral argument by *Michael D. Flanagan*.

For the defendants-respondents Continental Casualty Company, and American Casualty Company of Reading, Pennsylvania there were briefs by *Godfrey, Braun & Hayes*, with *Edward A. Hannan* of Milwaukee, and *Long & Levit*, with *Martin T. Lee* of Los Angeles, California; oral argument by *Martin T. Lee*.

For the defendants-respondents Hartford Accident & Indemnity Company there were briefs by *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.*, with *Paul J. Pytlik* and *Monte E. Weiss* of Milwaukee; oral argument by *Monte E. Weiss*.

For the defendants-respondents Northwestern National Insurance Company of Milwaukee, Wisconsin there were briefs by *Kasdorf, Lewis & Swietlik, S.C.*, with *Kevin A. Christensen* of Milwaukee; oral argument by *Kevin A. Christensen*.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J. Spic and Span, Inc., appeals from the judgments and order granting summary judg-

ment in favor of its insurers, Continental Casualty Co., American Casualty Co., Hartford Accident & Indemnity Co., and Northwestern National Insurance Co. The trial court concluded that, under *City of Edgerton v. General Casualty Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), *cert. denied*, 115 S. Ct. 1360 (1995) and *cert. denied sub. nom.*, 115 S. Ct. 2615 (1995), the insurers did not have a duty to defend or indemnify Spic and Span in an underlying federal suit. Spic and Span also challenges the trial court's conclusion that California law governs the calculation of defense attorney compensation in the underlying litigation. We conclude that Spic and Span waived its challenge to the choice of California law. We agree with Spic and Span, however, that the trial court erred in its determination of the duty to defend.

The facts relevant to this appeal are undisputed. On September 10, 1970, Spic and Span and T & F, Inc., entered into an agreement in which Spic and Span became the sublessee of a portion of a building in Westminster, California, for operation of its dry cleaning business (through its subsidiary, S & S Enterprises). Spic and Span operated in that location from 1970 to June 22, 1987.

In 1986, Los Angeles Land Company entered into a ground lease with T & F, Inc., obtained an assignment of Spic and Span's sublease, and, in 1987, assigned its interests in any leases concerning the property to ShopWest Partners, Ltd. Spic and Span terminated its lease with ShopWest in June 1987 and, shortly thereafter, Los Angeles Land Company began developing a shopping center on the property. During the course of preliminary site preparation for the shopping center, Los Angeles Land Company discovered that the soil and groundwater had been contaminated with per-

chloroethylene ("perc"), a hazardous toxic substance used by dry cleaners. The Orange County Health Care Agency required Los Angeles Land Company and ShopWest to remediate the property.

Los Angeles Land Company and ShopWest (collectively, "L.A. Land") subsequently filed suit against Spic and Span in the United States District Court, Central District of California, presenting numerous statutory and common law claims,[1] and seeking, *inter alia*, actual, punitive, and exemplary damages allegedly resulting from groundwater and soil contamination. Spic and Span tendered the defense to its insurers who either denied coverage or accepted the defense under a reservation of rights.[2]

This appeal arises from the subsequent suit Spic and Span filed in Wisconsin circuit court against its

---

[1] The complaint sought response costs and declaratory relief under "CERCLA," the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.*, and claimed: breach of lease; tortious denial of existence of contractual obligations; tortious breach of covenant to keep and/or surrender premises in good condition; breach of warranty; tortious breach of covenant not to use property for illegal purposes; waste; breach of statutory duty to repair damages caused by lack of ordinary care; negligence; fraudulent concealment; and breach of covenant of adequacy for intended use.

[2] The insurers agree with Spic and Span that an "insurance company must defend the action when some of the allegations in the complaint fall within the policy coverage because 'apportionment of responsibility for the defense is neither practical nor desirable.' " *Grube v. Daun*, 173 Wis. 2d 30, 73, 496 N.W.2d 106, 122 (Ct. App. 1992) (citation omitted). We need not, therefore, analyze the underlying complaint against Spic and Span claim by claim. If any one of the claims would require an insurer to defend Spic and Span, the "insurance company must defend the action." *Id.*

insurers alleging breach of contract and seeking a declaratory judgment that the insurers had a duty to defend and indemnify Spic and Span in the underlying suit under the terms of the several comprehensive general liability policies. Spic and Span filed a motion for partial summary judgment; the insurers filed cross-motions for summary judgment maintaining that, under *Edgerton*, they had no duty to defend or indemnify Spic and Span.

The insurers, at different times, each provided Spic and Span comprehensive general liability coverage while it operated the dry cleaning business on the L.A. Land property. The duty to defend language of the policies was virtually the same and similar to the CGL policy language examined in *Edgerton*.[3] A representative duty to defend clause from one of the insurers' policies reads:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage . . . caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages . . . .

Concluding "[t]hat the remediation costs are not damages" and that *Edgerton* controlled, the trial court granted summary judgment to the insurance companies.

The methodology for reviewing summary judgment motions has been recited many times and need

---

[3] The insurance companies do not contend that their policies differ in any way that would render differing duties to defend under *Edgerton*. We, therefore, analyze the policies together.

not be repeated here. Our review is *de novo. See Park Bancorporation, Inc. v. Sletteland,* 182 Wis. 2d 131, 140, 513 N.W.2d 609, 613 (1994). The interpretation of an insurance policy presents a question of law that we review independently of the trial court. *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990).

Spic and Span argues that: (1) *Edgerton* establishes that coverage exists where, as here, the underlying suit expressly includes claims for legal damages; and (2) remediation costs are legal damages, which under *Nischke v. Farmers & Merchants Bank & Trust,* 187 Wis. 2d 96, 522 N.W.2d 542 (Ct. App. 1994), and its progeny, are recoverable from third parties. Spic and Span is correct.

A CGL policy does not provide coverage for an insured's costs of remediating environmental contamination unless there is an underlying "suit seeking damages." *Edgerton,* 184 Wis. 2d at 786, 517 N.W.2d at 479. Spic and Span and the insurers agree that in this case, unlike *Edgerton,* the underlying federal court action in California is a "suit." Thus, we need only decide whether the underlying suit seeks "damages" requiring the insurers to defend and indemnify Spic and Span.

The Wisconsin Supreme Court has explained that "damages" in insurance policies "unambiguously means legal damages. It is legal compensation for past wrongs or injuries and is generally pecuniary in nature." *Shorewood School Dist. v. Wausau Ins. Cos.,* 170 Wis. 2d 347, 368, 488 N.W.2d 82, 89 (1992). The insurers argue, therefore, that, under *Shorewood* and *Edgerton,* "damages" are not being sought because "all of the claims" against Spic and Span are "for the gov-

ernment mandated remediation." Thus, the insurers characterize the underlying federal action as one merely "seeking indemnification from Spic and Span for response costs."

The insurers are wrong. As counsel for Spic and Span explained at oral argument before this court, "If Spic and Span owned the property that was at issue here, and the contamination had not migrated off of the property that Spic and Span owned, . . . it would fall within the scope of *Edgerton*." In the federal suit, however, L.A. Land is suing Spic and Span for remediation costs and additional damages allegedly suffered because of Spic and Span's operations allegedly resulting in "contamination in both the soil and groundwater at the Property." The complaint and its exhibits clarify that "at the Property" includes areas apart from the portion of the building occupied by Spic and Span.

Citing *Nischke*, Spic and Span contends that a landowner may recover the remediation costs from a tortfeasor who inflicts damages on that landowner's property. The insurers correctly respond that *Nischke* did not address the issue of "damages" and does not resolve the instant case. However, in *Wisconsin Public Service Corp. v. Heritage Mutual Insurance Co.*, 200 Wis. 2d 821, 548 N.W.2d 544 (Ct. App. 1996), we built upon the logic of *Nischke*, stating:

> In *Nischke*, we recognized that where a landowner's action was based in negligence, the landowner could recover from a tortfeasor the costs to remediate a site in response to letters from the DNR. Additionally, we held that because the landowner had a legal duty to restore the property, she could recover the cost of repair from the tortfeasor even though such cost exceed the diminishment in her property's value. The landowner in *Nischke* received legal

125

> compensation from the tortfeasor for past wrongs, or legal damages, which, according to *Edgerton* are what the term "damages" as used in insurance policies unambiguously means.
>
> In *Nischke*, we did not address whether the tortfeasor's insurer would be required to indemnify the tortfeasor; the issue presented was whether the landowner could recover from the tortfeasor. However, *Nischke* is instructive because it stands for the proposition that when a landowner spends money in response to a government directive to remediate, the money can be recovered as legal damages from the tortfeasor.

*Id.* at 830, 548 N.W.2d at 547 (citations omitted). Significantly, we explained that *Edgerton* does not "preclude an insurer's obligation to defend and indemnify its insured, the tortfeasor, in those cases where the government has ordered the landowner to clean up the negligently-damaged property." *Id.* at 833, 548 N.W.2d at 548.

*General Casualty Co. v. Hills*, 201 Wis. 2d 1, 548 N.W.2d 100 (Ct. App. 1996), provides the additional factual and legal links to the instant case. Hills, a gas station owner, had arranged for the transport of his station's waste to a refinery that recycled used oil. The United States Environmental Protection Agency sued the refinery to remediate contamination "at or near" the refinery. *Id.* at 4, 548 N.W.2d at 101. Although Hills's station was nowhere near the refinery, and although Hills had done nothing to directly cause any damage, the refinery sued Hills as one of numerous third-party defendants for the "alleged contribution to the contamination," *id.* at 10-11, 548 N.W.2d at 104, thus leading Hills to seek coverage from his insurance company. We concluded that "Hills [was] entitled to indemnification for his contribution to the contamina-

tion on [the refinery's] property, even if the property damage is cleaned up in response to a government directive." *Id.* at 12, 548 N.W.2d at 104.

Although similar to *Hills* in most respects, the instant case offers at least one factual distinction that again advances the *Edgerton* evolution. Unlike *Hills* who neither occupied nor controlled the refinery, Spic and Span occupied and, arguably, controlled a portion of L.A. Land's building. We conclude, however, that this factual distinction is not dispositive to our analysis. The more salient consideration is that the alleged contamination reached L.A. Land's property and perhaps beyond. As we pointed out in both *Wisconsin Public Service Corp.*, and in *Hills*, " 'A hallmark of the comprehensive general liability policy is that it insures against injury done to a third party's property.' " *Wisconsin Public Serv.*, 200 Wis. 2d at 831, 548 N.W.2d at 548; *Hills*, 201 Wis. 2d at 12, 548 N.W.2d at 104 (citation omitted).

Accordingly, we conclude that the rationale of *Hills* extends to these circumstances; that the federal action is a suit seeking damages and, therefore, that Spic and Span's insurers have a duty to defend the underlying suit. Thus, we reverse the trial court's grant of summary judgment in favor of the insurers and its denial of Spic and Span's motion for partial summary judgment, and we direct the trial court to enter partial summary judgment for Spic and Span.[4]

---

[4] Given our agreement with Spic and Span's primary argument, we need not address Spic and Span's additional arguments requesting an award of the expense costs prior to the trial court's decision, and regarding whether the insurers were estopped from denying coverage.

Spic and Span also argues that the trial court erred in deciding that California law governs the calculation of compensation for Spic and Span's attorneys in the underlying suit. The trial court resolved the choice of law issue by applying Wisconsin law to the duty to defend and other questions, but "carved out" an exception for the calculation of defense compensation. The trial court concluded that because the underlying litigation was taking place in California, the judge in California "should have control over the compensation of attorneys," and such control "belongs under California law."

On appeal, Spic and Span argues that "California's limitation on independent counsel selected by the insured would undermine Wisconsin policy and the intentions and expectations of the parties to insurance policies negotiated, sold and issued in Wisconsin." We need not address Spic and Span's concern, however, because the record reflects Spic and Span's tacit acceptance of California law for the calculation of defense compensation.

The underlying federal action was filed in January, 1988. In a letter dated June 1, 1988, CNA Insurance Companies[5] informed counsel for Spic and Span that it was accepting the tender of defense "under a full reservation of rights." The letter also informed counsel that although Spic and Span's assignment of the defense was to a Los Angeles law firm "not on our regular panel . . . in accordance with the Cumis Decision as well as the Civil Liability Reform Act of 1987,[6]

---

[5] CNA is the collective reference for respondents Continental Casualty Company and American Casualty Company of Reading, Pennsylvania.

[6] As CNA explained and argued in its reply brief to the trial court:

there is a possibility that the continued use of the counsel of your choice will be in order and acceptable to us." The letter then stated, "Such use, of course, will be subject to all aspects of the Civil Liability Reform Act of 1987."

The next reference to any possible dispute on this issue is found in CNA's September 20, 1988[7] letter to counsel for Spic and Span. The letter begins:

> As you can see by the enclosed correspondence to Mr. Taylor, I have forwarded our check for payment of that portion of his billing to be considered as owed in accordance with the Civil Code Section 2860. In our recent telephone conversation you had indicated that you were in disagreement as to whether that section applies in this case.

---

As part of the Civil Liability Reform Act of 1987, the California legislature enacted Cal. Civil Code 2860, which provides, in part, that:

> (c) When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that counsel selected by the insured possess certain minimum qualifications . . . The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. . . .

This statute, sometimes referred to as the "Cumis Statute" (in reference to the case entitled *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal. App.3d 358 (1984)) should be applied to limit the amount payable by CNA to Spic and Span's independent counsel retained in the California action to the rates CNA ordinary pays for the defense of similar actions in the community where the underlying claim arose or is being defended.

(Ellipses in CNA brief.)

[7] The two page letter is dated September 20, 1988 on page one, and September 14, 1988 on page two.

At this time I also wish to advise you that that section indicates any dispute concerning attorneys fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute.[8]

The letter enclosed CNA's September 20, 1988[9] letter to the Los Angeles firm representing Spic and Span. The letter to the firm, referring to "Civil Code, Paragraph 2860," stated that CNA had "adjusted your billings accordingly."

We have searched the record and found no further correspondence or other communication indicating Spic and Span's disagreement with the proposition that compensation disputes would be resolved by arbitration, the method specified under the Cumis statute. Although at oral argument before this court Spic and Span contended that it had promptly raised the issue in writing, Spic and Span was unable to point to anything in the record to establish that. Indeed, Spic and Span's extensive legal correspondence on this and related compensation matters does not appear to begin until November 1991.

At oral argument before this court, Spic and Span conceded that the California litigation had been continuing for "approximately one year" before it raised the compensation issue, for the first time, in the Wisconsin

---

[8] CALIFORNIA CIV. CODE § 2860(c) (West 1995) in part provides: "Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute."

[9] This letter also was dated September 20, 1988 on page one, and September 14, 1988 on page two.

litigation.[10] As reflected by the 1988 correspondence in the record, lawyers had been retained, bills had been submitted, and CNA had clarified the legal basis for adjusting compensation under California law. Had Spic and Span wanted to contest the applicability of California's Cumis statute, it could have done so promptly in the California litigation. Spic and Span's failure to do so waived its challenge to the application of California law to the calculation and potential arbitration of defense attorney compensation.

*By the Court.*—Judgments and order affirmed in part; reversed in part and cause remanded.

■■■■■■

[10] The estimate seems conservative given that the California litigation began in January 1988 and the Wisconsin action began in September 1989.