Edwin KENNEDY, Plaintiff–Appellant,

v.

NATIONAL JUVENILE DETENTION ASSOCIATION and Illinois Juvenile Justice Commission, Defendants–Appellees.

No. 98–1458.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 1999.

Decided Aug. 9, 1999.

Rehearing and Rehearing En Banc Denied Sept. 24, 1999.

Edwin Kennedy (argued), Edgerton, WI, Pro se.

Eugenia G. Carter (argued), Lafollette & Sinykin, Madison, WI, for National Juvenile Detention Association.

Edmund C. Baird (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Illinois Juvenile Justice Commission.

H. Thomas Byron, III (argued), Mark B. Stern, Department of Justice, Civil Division, Appellate Section, Washington, DC, for United States of America.

Before BAUER, MANION, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

Edwin Kennedy appeals the district court's decision to dismiss his copyright infringement claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Kennedy claims that this decision was in error because the consulting agreement he entered into with the National Juvenile Detention Association ("NJDA") did not grant either the NJDA or the Illinois Juvenile Justice Commission ("IJJC") the right to produce derivative works from his report. For the reasons set forth below, we affirm the district court's decision.

## I. BACKGROUND

The facts of the case, predominantly taken from Kennedy's first amended complaint, are regarded as true for the purposes of this appeal. On October 30, 1995, Kennedy and the NJDA entered into an agreement for Kennedy to provide consulting services, to conduct a study of the juvenile justice requirements of the Seventh Judicial Circuit of Illinois (the "cir-

cuit"), and to submit a written report of his findings. The study was funded by the IJJC. The goals of the study were to collect data regarding current juvenile detention practices, to recommend improvements in the juvenile detention process, and to estimate future juvenile detention requirements within the circuit. The contract was to run until September 30, 1996.

On September 20, 1996, Kennedy submitted a draft of his report to the NJDA. At the behest of the NJDA and IJJC, Kennedy made minor revisions to his report for no additional compensation. A few months later, the NJDA requested that Kennedy, in exchange for an additional $10,000, make more revisions to his report because the original changes were not as extensive as they had hoped. Kennedy refused to make the revisions because he was concerned about compromising the integrity of his work, and he subsequently applied to register a copyright in his work. The copyright was effectively registered on January 13, 1997. In the meantime, the NJDA requested that Kennedy provide a disk with his copy of the final report. Thinking this was a condition for payment according to the agreement, Kennedy supplied the NJDA with the disk. When the contract had expired and Kennedy had refused to make further revisions to his report, the NJDA hired Craig Boersema to supervise the completion of the report. Kennedy was fully compensated for his completed work.

On January 17, 1997, Anne Studzinski, administrator of the IJJC, hosted a meeting in Chicago, attended by the NJDA's Executive Director Earl Dunlap, and Boersema, for the purpose of altering Kennedy's report; Kennedy neither knew of nor assented to the revision. Studzinski defended her revision of the report based on a clause in the contract which states:

> Where activities supported by this contract produce original computer programs (the term computer programs includes executable computer programs and supporting data in any form), writing, sound recordings, pictorial reproductions, drawing or other graphical representations and works of any similar nature, the government has the right to use, duplicate and disclose, in whole or in part, such materials in any manner for any purpose whatsoever and have others do so. If the material is copyrightable, Edwin Kennedy may copyright such, but the government reserves a royalty-free non-exclusive and irreversible license to reproduce, publish, and use such materials in whole or in part and to authorize others to do so.

In March of 1997, Kennedy released his version of the report, and on April 1, 1997, Dunlap issued a press release discrediting Kennedy and his work in order to promote the revised version of the work. The NJDA published the official report in August of 1997.

Kennedy filed suit against the NJDA and IJJC for copyright infringement in the Western District of Wisconsin. The NJDA and IJJC filed motions to dismiss the claim based on lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim. The parties also sought sanctions under Rule 11. Additionally, the IJJC claimed sovereign immunity under the Eleventh Amendment. The district court did not rule on the Eleventh Amendment claim, but granted the defendants' motions to dismiss for failure to state a claim, rejecting the other theories as well as the request for sanctions. Kennedy now appeals the dismissal arguing that, for a variety of reasons, the case should not have been dismissed pursuant to Rule 12(b)(6). The NJDA re-asserts its contention that it had the right to produce derivative works from Kennedy's report or, in the alternative, that it had a right, as a joint author of the study, to publish its version of the report.

## II.  ANALYSIS

### A.  Motion To Dismiss

■  Although Kennedy raises a variety of issues on this appeal, they can, for

the most part, be boiled down to one: whether the district court properly granted the defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993). We review a district court's decision to grant a motion to dismiss *de novo* and regard all well-pleaded facts as true, looking at them in a light most favorable to the plaintiff. *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1173 (7th Cir.1999). When a contract is attached to the pleadings, we may look beyond the pleadings and look at that contract to determine whether the motion to dismiss was properly granted. *Craigs, Inc.*, 12 F.3d at 688.

■ Kennedy concedes that the contractual agreement conferred upon the NJDA the right to reproduce and publish his report, however he argues that it did not grant either the NJDA or IJJC the right to create derivative works from it. The owner of a copyright of literary material is granted exclusive rights to do and authorize another to do any of the following: (1) reproduce the copyrighted work; (2) prepare derivative works based upon the copyrighted work; (3) distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. 17 U.S.C. § 106. Any of these exclusive ownership rights may be transferred by written instrument. *Id.* § 204. When such a conveyance is made, the grantee has an exclusive license in the copyrighted material. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774–75 (7th Cir.1996). The holder of an exclusive license violates the copyright if he exceeds the scope of that license. *Id.* at 775.

■ Alternatively, the owner of a copyright may permit another to merely use the copyrighted material without transferring ownership in the copyright. This is called a nonexclusive license. *Id.* A nonexclusive license need not be evidenced by a writing. *See Nimmer on Copyright* § 10.03[A]. An implied nonexclusive license has been granted when (1) the licensee requests the creation of a work; (2) the licensor creates the work and delivers it to the licensee who asked for it; and (3) the licensor intends that the licensee copy and distribute the work. *Shaver*, 74 F.3d at 776 (citing *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir.1990)).

■ Normal rules of contract construction are generally applied in construing copyright agreements. *Nimmer on Copyright* § 10.08. Under Wisconsin law, contracts are to be construed as they are written. *Amcast Indus. Corp. v. Affiliated FM Ins. Co.*, 221 Wis.2d 145, 584 N.W.2d 218, 226 (App.1998). When the language is plain and unambiguous, a reviewing court must construe the contract as it stands. *Keller v. Keller*, 214 Wis.2d 32, 571 N.W.2d 182, 184 (App.1997). In construing the contract, terms are to be given their plain and ordinary meaning. *Meyer v. City of Amery*, 185 Wis.2d 537, 518 N.W.2d 296, 298 (App.1994). The fact that a term is general enough to encompass more than one interpretation does not necessarily make that term ambiguous. *Amcast*, 584 N.W.2d at 226 (citing *Mattheis by Vowinkel v. Heritage Mut. Ins. Co.*, 169 Wis.2d 716, 487 N.W.2d 52, 54 (App.1992)). Finally, giving a reasonable meaning to every provision of the contract is preferable to leaving some of the language useless or superfluous. *Heritage Mutual Ins. Co. v. Truck Ins. Exchange*, 184 Wis.2d 247, 516 N.W.2d 8, 9 (App.1994).

■ The district court found, and we agree, that the consulting agreement granted the NJDA a nonexclusive license to reproduce, publish, and use Kennedy's copyrighted report. The court also found that the term "use" must give the defendants rights beyond those of reproduction and publication. Moreover, it found that, considering the broad, comprehensive

grant of authority given to the NJDA and IJJC, it was irrelevant that the agreement did not specifically refer to the defendants' right to create derivative works from Kennedy's copyrighted materials. Therefore, the district court found that the agreement gave the defendants permission to alter Kennedy's report and create a derivative work from it.

The NJDA suggests in its brief that the word "use" in this case is synonymous with "prepare derivative works." While we will not go so far as to agree with this interpretation, in the context of the consulting agreement between Kennedy and the NJDA, the term "use" does encompass the act of creating derivative works. As stated above, the agreement gave the defendants "the right to use, duplicate and disclose, in whole or in part, such materials in any manner *for any purpose whatsoever.*" (emphasis added). This phrase grants considerable latitude to the defendants to use Kennedy's report. Additionally, it gives the defendants the right to "reproduce, publish, *and use*" any copyrighted material (emphasis added). Kennedy argues that the defendants' rights are limited to those of reproduction and publication of his works. In accordance with general contract construction, however, we agree with the district court that this contract granted rights beyond those of reproduction and publication. In the context of copyright law, one of those other rights is the right to prepare derivative works. To read the agreement any other way would render the term "use" superfluous.

Kennedy also argues that the district court erred by construing ambiguous language of the consulting agreement in favor of the drafting party, the NJDA. This argument is without merit. The district court did not find, nor do we, that the language in the agreement is ambiguous. Accordingly, we construe the contract as it stands. *Heritage Mutual Ins. Co.*, 516 N.W.2d at 9. And as the contract stands, it grants the defendants the right to use

Kennedy's report for any purpose whatsoever.

Because we have decided that the language of the consulting agreement granted the NJDA and the IJJC the right to produce derivative works, we need not decide whether the NJDA and Kennedy are joint authors of the report. Such a decision would be necessary should the NJDA try to copyright the report, but we are not faced with that issue.

As an alternative theory as to why the district court erred in dismissing his claim, Kennedy asserts, for the first time on this appeal, that the defendants' actions constituted a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Ordinarily, absent extreme circumstances, we do not consider arguments that are raised for the first time on appeal. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986). However, as Kennedy points out, the complaint does not necessarily have to point to the proper statute in order to state a cause of action to which he is entitled relief. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir.1992). Kennedy, especially as a *pro se* litigant, can state a cause of action even if he points to the wrong legal theory, so long as "relief is possible under any set of facts that could be established consistent with the allegations." *Id.* (quoting *Shannon v. Shannon*, 965 F.2d 542 (7th Cir.1992), *cert. denied, Shannon v. United Services Auto. Ass'n.*, 506 U.S. 1028, 113 S.Ct. 677, 121 L.Ed.2d 599 (1992)). Giving Kennedy the benefit of the doubt, we will examine his Lanham Act claim.

We have decided that a plaintiff must prove the following three elements to state a claim under the Lanham Act: (1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the

misrepresentation. *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir.1990): One situation in which an author could file a Lanham Act claim, as opposed to a copyright infringement claim, would be to ensure that his name is associated with a work when the work is used; this is known as a "reverse passing off" claim. *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 781 (2nd Cir.1994). Another situation where an author could assert a Lanham Act violation would arise when an author, whose name is associated with a given work, does *not* want to be associated with that work. *Id.* at 780. This is known as a "passing off" or "palming off" claim. *Id.* Kennedy relies on *Smith v. Montoro*, 648 F.2d 602 (9th Cir. 1981), in claiming that the Lanham Act applies to the defendants' conduct. That case involved a reverse passing off in which the defendant replaced the plaintiff's name with another's name in the credits and advertisements of a motion picture. *Id.* at 603. The court noted that reverse passing off occurs when the defendant removes the name or trademark from another person's product and sells it with a different name, thus confusing the public. *Id.* at 605. However, it is generally accepted that an author who sells or licenses his work, absent an express provision in a contract, does not have an inherent right to be credited as the author of the work. *Nimmer on Copyright* § 8D.03 [A][1]. No such provision exists in the consulting agreement between Kennedy and the NJDA. Moreover, we are confused as to why Kennedy now raises a Lanham Act violation when it appears that he does not want his name, which is not on the NJDA's version of the report, to be associated with it. After all, he published his own version of the report and he claims that the revisions made by the NJDA compromise the academic integrity of his report. Therefore, Kennedy's Lanham Act claim is misplaced, and his appropriate remedy would stand within the copyright laws, which, as

we discussed, were not violated in this case.

## B. Rule 11 Sanctions

The NJDA sought costs and attorney's fees from Kennedy pursuant to Rule 11 of the Federal Rules of Civil Procedure. The district court denied this request, and we affirm that decision. We give deference to the district court's decision to grant or deny Rule 11 sanctions. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir.1989). In this case (even though it was disposed of on a motion to dismiss), the claim was not frivolously brought, especially considering the plaintiff's lack of legal representation. Nor was it brought without the proper evidentiary support. The fact that we did not rule in Kennedy's favor does not automatically entitle the defendants to Rule 11 sanctions. We see no reason to disturb the district court's ruling on this matter.

## C. Eleventh Amendment

The district court disposed of this matter without passing on the issue of whether the IJJC is immune to a copyright suit under the Eleventh Amendment, which states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Am. XI. Briefs submitted by the IJJC and the U.S. Department of Justice ask us to resolve the issue but disagree about whether the issue is jurisdictional. Since the immunity granted by the Eleventh Amendment may .be waived and matters of subject matter jurisdiction may not, the Eleventh Amendment immunity is not jurisdictional. Because we can decide the case on nonconstitutional grounds, we will not rule on the issue of whether the copyright laws abrogate a state's immunity from suits in federal court.[1]

1. Although the United States Supreme Court recently ruled in *College Savings Bank v. Flor-*

## III. CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's decision to grant the defendants' motion to dismiss.

MANION, Circuit Judge, concurring in part and dissenting in part.

The court accurately sets out the law governing copyright law but I respectfully dissent from the court's application of that law. In all other respects I concur.

At this point in the litigation, the defendants do not dispute that Kennedy has a valid copyright interest in his report. As copyright holder, Kennedy has three exclusive rights that are relevant here: the right "to reproduce the copyrighted work," 17 U.S.C. § 106(1); the right "to prepare derivative works based upon the copyrighted work," § 106(2); and the right "to distribute copies ... of the copyrighted work," § 106(3). Kennedy alleges, and the defendants do not dispute, that the report the defendants prepared is a derivative work based upon his report. The issue before us, then, is whether the defendants had a license to make this derivative work.

As the court notes, opn. at 693, the contract between the parties contained two separate clauses granting the defendants rights in works created as part of the study: one clause applied (presumably to non-copyrightable materials) generally, and the other applied to copyrightable works. The general clause stated: "the government has the right to use, duplicate and disclose, in whole or in part, such materials in any manner or for any purpose whatsoever." The clause for copyrightable works was similar, but different in important respects: "the government reserves a royalty-free non-exclusive and irreversible license to reproduce, publish, and use such materials in whole or in part." First, the clause governing copyrightable materials does not include the

phrase from the general clause "in any manner or for any purpose whatsoever," so it apparently grants somewhat more limited rights than does the general clause. Second, two of the three verbs describing the rights granted are different. Although the words used in the general clause, "duplicate" and "disclose," are very similar in meaning to the ones used in the copyrightable clause, "reproduce" and "publish," the latter two are terms of art taken from the Copyright Act while the former are not. As noted above, a copyright holder has the right to "reproduce" and "distribute" the copyrighted work, and under the Act "publish" means the same as "distribute," see 17 U.S.C. § 101 (defines "publication" using same language that § 106(3) uses to describe "distribute"). There is no dispute then that the contract unambiguously grants the defendants two of Kennedy's exclusive statutory rights. But those two don't include the third, the right to make derivative works, the right at issue here.

So the issue is whether "use," the third verb in the clause, unambiguously grants to the defendants the right to prepare derivative works. The other two verbs in this clause are unambiguous because they are statutory terms of art. But the drafters of the contract (the defendants) chose not to use the third term of art—"prepare derivative works." Instead they used the vague term "use." This suggests that the parties intended "use" to mean something other than simply "prepare derivative works." They may have intended it to mean something more than prepare derivative works or perhaps something less. It is very possible that they intended it to mean only prepare derivative works. But their intention is not clear from the contract's text, and so this term is "ambiguous." *Rosplock v. Rosplock*, 217 Wis.2d 22, 577 N.W.2d 32, 36 (App.1998) ("A written contract is ambiguous if it is reason-

*ida Prepaid Postsecondary Education Expense Board,* —— U.S. ——, 119 S.Ct. 2219, —— L.Ed.2d —— (1999) that § 43(a) of the Lanham Act does not abrogate a State's sovereign immunity from suit in Federal court, this ruling has no effect on this case since it has been decided on other grounds.

ably susceptible to more than one meaning."). Thus the parties should be given the opportunity to create a record to show what meaning was intended, *see Jones v. Jenkins*, 88 Wis.2d 712, 277 N.W.2d 815, 819 (1979) ("where an ambiguity exists in a contract which requires resort to extrinsic evidence, the question is one of fact"), and doubts should be construed against the drafters to the extent doing so does not otherwise frustrate the intentions of the parties, *Kohler Co. v. Wixen*, 204 Wis.2d 327, 555 N.W.2d 640, 645 (App.1996). Thus I would reverse the district court's dismissal under Fed.R.Civ.P. 12(b)(6).

IJJC also raised an Eleventh Amendment argument that the district court did not decide. (This issue has no impact on NJDA because it is not a state actor.) Whether the Eleventh Amendment bars copyright suits against the states is a difficult issue, but one we need not decide. On April 20, 1999, the Supreme Court heard arguments in two companion cases that raise this issue. *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, No. 98–149; *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, No. 98–531. Were this case remanded, the district court could consider these anticipated Supreme Court decisions.